[No. B004259. Second Dist., Div. Seven. May 9, 1985.]

CASA DE VALLEY VIEW OWNER'S ASSOCIATION, INC.,
Plaintiff and Respondent;
HUSTON T. CARLYLE et al., Plaintiffs and Appellants, v.
ROBERT W. STEVENSON et al., Defendants and Respondents.

**COUNSEL**

Huston T. Carlyle, in pro. per., for Plaintiffs and Appellants.

Brown, Winfield & Canzoneri and Thomas D. Green for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

## OPINION

**THOMPSON, Acting P. J.**—This case involves a novel situation in which coplaintiffs in the action below are adversaries on appeal from a judgment enforcing a stipulated settlement. Huston and Grace Carlyle appeal from the judgment entered pursuant to a stipulated settlement following the granting of a motion under Code of Civil Procedure section 664.6[1] by Casa de Valley View Owner's Association (Association). The Carlyles contend that the superior court improperly utilized section 664.6, and lacked jurisdiction. We disagree, and will affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The action below arose out of a condominium conversion. The Association is the homeowner's association for the condominium development. The Carlyles are resident owners of a condominium unit and members of the Association. In March 1980, the Association sued the defendant developers in this case (No. NCC 10492 G). At that time, Mr. Carlyle was president of the board of directors (directors) of the Association and had been retained to prosecute the lawsuit. On July 23, 1980, the Association's new directors adopted a resolution terminating Mr. Carlyle's legal services and retaining another law firm to pursue the litigation. But Mr. Carlyle refused to withdraw voluntarily.

In August 1980, the Carlyles moved to file a complaint in intervention, claiming the directors had a conflict of interest and suggesting their collusion with defendants. Both the Association and the defendants filed opposition to the motion. The Association also asked the court to take judicial notice of another case (No. 10633 G) in which Mr. Carlyle was suing two directors (Jacobson and Glenn). Further, the Association filed a cross-motion for the court to compel Mr. Carlyle's withdrawal as attorney of record in the case herein.

On September 5, 1980, the court denied the Carlyles' motion to intervene. The court, however, allowed the Carlyles to join the action as parties plaintiff and to prosecute the action in propria persona. Further, the court granted the Association's motion for an order substituting the law firm in place of Mr. Carlyle as attorney of record for the Association in this case.

On July 16, 1982, a voluntary settlement conference was held before the trial court in which defendants, the Carlyles and the Association participated. Their settlement conference statements pointed out that the defendants'

---

[1]Unless otherwise stated, all statutory references are to the Code of Civil Procedure.

joint settlement offer was conditioned upon acceptance by all plaintiffs; the Association and defendants had agreed on settlement terms, but the Carlyles had not; and the Carlyles had filed two lawsuits against the Association directors.[2]

At the conference, all counsel for the parties, including Carlyle, reached the following stipulated settlement on the record with respect to the action below. As the court stated: "The record will reflect the fact that the defendants and various parties have tendered to plaintiff [Association] a prospective settlement of the claims of said association as reflected in this litigation for the payment of $250,000.00. In addition to the claims of the Association, there exists individual claims on behalf of plaintiffs [Carlyles] . . . . in this litigation . . . as well . . . as . . . in . . . Case No. NCC 11892 G, on the records and files of this court.

"As a result of our discussions, it is stipulated that the claims of [the Carlyles], as coplaintiffs in [this] Case No. NCC 10492 G, as well as plaintiffs in Case No. NCC 11892 G, have been settled on the following basis:

"[The Carlyles] will be paid, on behalf of the defendants, within two weeks from this date, the total sum of $20,000.00. In connection with said payment, [the Carlyles] will cause to be executed and delivered to counsel, in due form for filing with the Clerk of this Court, dismissals with prejudice of their individual causes of action and rights of action as to all defendants in Case No. NCC 10492 G, together with duly executed requests for entry of dismissals with prejudice as to all defendants in . . . Case No. NCC 11892 G.

"*The Carlyles will also deliver concurrently with delivery to them of the funds as indicated, a release executed by them in favor of the [Association], and counsel for [Association].*

"There will be delivered to the Carlyles simultaneously with delivery to them of the sum of $20,000.00, a general release in favor of the Carlyles, executed by [Association], as well as a general release in favor of the Carlyles executed by [directors] Jacobson & Glenn."

". . . . . . . . . . . . . . . . . . . . ."

"As a result of our discussion, Mr. Carlyle has indicated his willingness

---

[2]In addition to the suit against Jacobson and Glenn, which was no longer pending at the time of the settlement conference in March 1981, Mr. Carlyle had filed a derivative action suit (No. NCC 11173 G) against the directors.

to release individual members, present or past, of the [Association], from any claimed liability to himself or his wife, as well as releasing the Association itself, with the sole exception of the rights being asserted in Case No. NCC 11173 G [the stockholders' derivative action suit in which Mr. Carlyle remained as counsel of record].

". . . . . . . . . . . . . . . . . . . . . . . .

". . . . [T]here is going to be a release from [the Carlyles] in favor of the Association as an Association in addition to the individual members, past and present [and] other members of the Association." (Italics added.)

It was further pointed out by the court that, according to the stipulated agreement, it was incumbent upon Carlyle to prepare the dismissals with prejudice that he and his wife would have to sign and the other counsel would prepare the forms of releases. The stipulation was approved by the court and ordered entered in the minutes.

In connection with the settlement, in July 1982, the Carlyles received $20,000 from the defendants. Thereafter, on November 3, 1982, the Carlyles filed a dismissal with prejudice.

On December 24, 1982, the Association moved for entry of judgment on the stipulated settlement pursuant to section 664.6. It contended that the Carlyles had refused to sign releases tendered to them by the Association even though the Carlyles had received the $20,000 payment under the settlement agreement. The Carlyles opposed the motion on the merits, claiming, inter alia, the right to rescind.

The matter was submitted on January 28, 1983, following argument. On February 4, 1983, the trial court granted the Association's 664.6 motion for entry of judgment pursuant to the stipulated settlement. The court directed the Association's counsel to prepare the judgment. Its decision, which was entered in the minutes, provided in pertinent part:

"1. [The Carlyles] are generally releasing the Association, Counsel for the Assn., individual members of the Assn., present and past, and individual board members of the Assn.;

"2. The Assn. and [directors] Jacobson and Glenn are generally releasing [the Carlyles].

"The term 'general release' shall refer only to the obligation or potential obligations arising from the pending lawsuit and be interpreted pursuant to Civil Code Sections 1541 and 1542."

On February 7, 1983, the Association's voluntary dismissal with prejudice of the entire action brought by the Association was filed and entered. On February 14, 1983, the Carlyles filed a noticed motion to reconsider, modify, clarify, and/or vacate the ruling and judgment. In addition, the Carlyles requested a statement of decision.

On February 16, 1983, the trial court gave further directions to Association's counsel that "[t]he form of judgment should set forth the terms of the settlement and articulate, *inter alia,* the release language as well, in accordance with CCP 664.6." Also, the court denied the Carlyles' request for a statement of decision because it was not required in the proceeding.

On March 11, 1983, the motion for reconsideration, modification and clarification and vacation of judgment was argued and submitted. Later that date, the court denied the motion whereupon it signed and filed the judgment.[3] This appeal followed.

## DISCUSSION

### *Section 664.6 Authorizes This Procedure*

■ The Carlyles contend that the court improperly entered judgment upon Association's motion under section 664.6. The Carlyles argue, citing

---

[3]That judgment provides: "The court having considered the moving and opposing papers, including all exhibits, and having heard arguments of the parties it is hereby determined that judgment shall be entered consistent with the stipulated settlement entered on the record before this court on July 16, 1982 pursuant to which the defendants agreed to pay plaintiff [Association] the sum of $250,000 and plaintiffs [Carlyles] the sum of $20,000 on July 30, 1982. In connection with that $20,000 payment, [the Carlyles] agreed to cause to be executed and delivered to counsel in due form for filing with the clerk of this court, dismissals with prejudices of their individual causes of action and rights of action as to all defendants in this case No. NCC 10492G together with executed requests for entry of dismissal with prejudice in . . . Case No. NCC 11892G. The Carlyles also agreed to deliver concurrently with the delivery to them of the sum as indicated, a release executed by them in favor of the [Association], the individual board members, past and present, of the Association and counsel for [Association]. [The] Association agreed to deliver to the Carlyles, simultaneously with the delivery to them of the sum of $20,000, a general release in favor of the Carlyles executed by [Association], as well as a general release in favor of the Carlyles executed by [directors] William Jacobson and Larry Glenn.

"The sum of $20,000 was paid to the Carlyles on July 30, 1982. [The Carlyles] having refused to execute releases tendered to them pursuant to the stipulated settlement, the stipulated settlement being fully performed except therefor.

"It is hereby ORDERED AND ADJUDGED that [the Carlyles] shall and hereby do generally release [Association] and its past and present officers, directors, agents, employees, representatives and attorneys, including the law firm of Brown, Winfield & Canzoneri, from all existing or potential obligations or claims arising from or related to the matters asserted in this action or Case No. NCC 10633 G filed in this court and that [Association], its officers, directors, agents and employers and . . . Jacobson and . . . Glenn generally release [the Carlyles] from all existing or potential obligations and claims arising from or related to the matters asserted in this action or Case No. NCC 10633 G filed in this court.

"It is further ORDERED that the term 'general release' shall be interpreted pursuant to California Civil Code §§ 1541 and 1542.

"The clerk is ORDERED to enter this judgment."

*Duran* v. *Duran* (1983) 150 Cal.App.3d 176 [197 Cal.Rptr. 497], that the Association's "speaking motion" was an inappropriate procedure to compel enforcement of the stipulation because it did not meet the standard for summary judgment. We disagree. *Duran* is inapposite because the nonstatutory motion considered in that case preceded the enactment of section 664.6.

"The Legislature has now provided that a motion to enter judgment pursuant to such a settlement need not be a motion for summary judgment." (*Corkland* v. *Boscoe* (1984) 156 Cal.App.3d 989, 991 [203 Cal.Rptr. 356].) Section 664.6, enacted in 1981, explicitly provides statutory authorization for the entry of judgment upon a stipulated settlement by means of a noticed motion. That section provides: *"If parties to pending litigation stipulate,* in writing or *orally before the court, for settlement* of the case, or part thereof, *the court, upon motion, may enter judgment pursuant to the terms of the settlement."* (Italics added.)

In a well-reasoned opinion construing section 664.6 the *Corkland* court explained: "[W]hat formerly was a nonstatutory 'speaking' motion is now authorized by statute and is applicable not only to judicially supervised settlement conferences, but to stipulations of settlement in writing or orally before the court in pending litigation.

"Even where there are contentions of disputed facts, if the motion is one for entry of judgment pursuant to such a settlement, the Legislature has now approved the filing of the motion under section 664.6. (See The Rutter Group, Weil and Brown, Cal. Practice Guide, Civil Procedure Before Trial, §§ 12:200-12:202.2.) A motion for summary judgment pursuant to section 437c, is no longer required. . . .

"In acting upon a section 664.6 motion, the trial court must determine whether the parties entered into a valid and binding settlement of all or part of the case. In making this determination trial judges, in the sound exercise of their discretion, may receive oral testimony or may determine the motion upon declarations alone. [Citation.]" (156 Cal.App.3d at p. 994.)

Here, the trial court could properly determine that the Carlyles had agreed to release the Association, its directors, members and counsel as part of a valid stipulated settlement and, accordingly, upon motion, enter judgment ordering these parties mutually released. The parties to the pending litigation had orally stipulated to terms of the settlement before the court in a judicially supervised settlement conference. The transcript of that testimony

was an exhibit before the court on the 664.6 motion. In addition, the court considered the conflicting declarations of the Carlyles and the Association as well as other exhibits. From our review of the record, we are satisfied that substantial evidence supports the court's exercise of its discretion to compel enforcement.

*Ordering Releases Between Coplaintiffs Pursuant to the Stipulated Settlement Was Proper*

■ The Carlyles also contend that the judgment was improper because there was no "pending litigation" at any time between the Carlyles and the Association. The record, however, shows that although the Carlyles and the Association were formally denominated coplaintiffs in the instant case, they were, in fact, adversaries. They opposed each other on motions and were embroiled in other litigation. In fact the express purpose of the voluntary settlement conference was to obtain the Carlyles' participation since any settlement was conditioned on their joining in the agreement.

Section 578 provides that judgment "may, when the justice of the case requires it, determine the ultimate rights of the parties on each side, as between themselves."

"Ordinarily the determination of an action between the parties, plaintiff and defendant, decides only the rights of the parties claiming adversely to one another, and does not attempt to adjudicate the rights of plaintiffs, between whom no issues are made, as between themselves . . . .

"Where, however, in the progress of an action it becomes necessary to do so, for any purpose within the power of the court to accomplish, it may do so, 'and it may, when the justice of the case requires it, determine the ultimate rights of the parties on each side, as between themselves.' " (*Haggin* v. *Clark* (1886) 71 Cal. 444, 451.)

Furthermore, "[i]t is also true that the parties may voluntarily submit and try an issue without any specific pleadings and thus be estopped from complaining thereat after judgment." (*McAllister* v. *Union Indemnity Co.* (1935) 2 Cal.2d 457, 460 [42 P.2d 305].)

The public policy of this state supports pretrial settlement of lawsuits and enforcement of judicially supervised settlements. (*Phelps* v. *Kozakar* (1983) 146 Cal.App.3d 1078, 1082 [194 Cal.Rptr. 872].) "It is common knowl-

edge in the legal profession that judicially supervised settlement conferences are critical to the efficient administration of justice in California. When the material terms of the settlement are agreed upon at the conference, the agreement must be enforced by the court." (*Greyhound Lines, Inc.* v. *Superior Court* (1979) 98 Cal.App.3d 604, 608 [159 Cal.Rptr. 657].)

Here, by stipulation at the settlement conference, the Carlyles voluntarily agreed to the submission and determination of this issue of mutual releases between the Carlyles and the Association. In exchange for the $20,000 payment by defendants, as part of the consideration, the Carlyles agreed to execute a release in favor of the Association, its directors and counsel. Having voluntarily consented to the determination of this issue before the court and having accepted the consideration, they should not be permitted to complain now.

*The Judgment Is Not Void for Lack of Jurisdiction*

██ ██ In their reply brief, the Carlyles further contend that the judgment was void for lack of jurisdiction.[4] The Carlyles argue that the court had no power to grant the Association's section 664.6 motion to enter judgment pursuant to the stipulation because the Carlyles' voluntary dismissal of all defendants was filed and entered prior to that noticed motion.

It is clear that at the time the stipulated settlement was made and approved by the court, the court had jurisdiction over the subject matter of the action and over the Carlyles as parties. "It is elementary that where a tribunal has jurisdiction over the parties and the subject matter, the jurisdiction continues until a final judgment is entered." (*Riley* v. *Superior Court* (1957) 49 Cal.2d 305, 309 [316 P.2d 956]; 1 Cal. Civ. Proc. Before Trial, *supra*, § 2.3, at p. 55.) The issue, therefore, is whether the court was divested of jurisdiction to act prior to rendering its decision and judgment.

The Carlyles rely on the proposition that where a plaintiff has filed a voluntary dismissal of an action, the court is without jurisdiction to act further and subsequent orders of the court are void. (See, e.g., *Gherman* v.

---

[4]The Carlyles can appeal from a purportedly void judgment "in order to clear the record." (*Eddings* v. *White* (1964) 229 Cal.App.2d 579, 583 [40 Cal.Rptr. 453].) Moreover, the Carlyles can raise the issue of subject matter jurisdiction for the first time on appeal even though never raised in the trial court, because subject matter jurisdiction cannot be conferred on the court by consent, waiver or estoppel. (See 1 Cal. Civil Procedure Before Trial (Cont.Ed.Bar 1977) §§ 2.3, 2.79, at pp. 55, 102; see also, e.g., *Emery* v. *Pacific Employers Ins. Co.* (1937) 8 Cal.2d 663 [67 P.2d 1046].)

*Colburn* (1971) 18 Cal.App.3d 1046, 1050 [96 Cal.Rptr. 424]; *Associated Convalescent Enterprises* v. *Carl Marks & Co., Inc.* (1973) 33 Cal.App.3d 116, 120 [108 Cal.Rptr. 782].) A voluntary dismissal of an entire action deprives the court of subject matter jurisdiction as well as personal jurisdiction of the parties. But here, the dismissal filed by the Carlyles did not dismiss the entire action. Rather, it was only a partial dismissal in which the Carlyles dismissed all their interests against the defendants. The complaint filed by plaintiff Association against the defendants was still before the court. Thus the court retained subject matter jurisdiction and the action could continue.

It is of course true that if the Carlyles' dismissal is treated as a dismissal for the purpose of jurisdiction, rather than just as an act in compliance with and required by the stipulated settlement, the entry of that dismissal "ousted the court of jurisdiction of the person" of the Carlyles. (*Sere* v. *McGovern* (1884) 65 Cal. 244, 245-246 [3 P. 859].) But, the Carlyles subsequently waived any lack of personal jurisdiction when they opposed on the merits the Association's motion under section 664.6 to compel enforcement of the stipulation. (See § 410.50; *California Dental Assn.* v. *American Dental Assn.* (1979) 23 Cal.3d 346, 351-352 [152 Cal.Rptr. 546, 590 P.2d 401].) ▆ "[A]lthough a [party] may make a special appearance to challenge the jurisdiction of the court over his person [citations], when he simultaneously answers to the merits he is no longer entitled to make this challenge. [Citations.] It is well settled that 'if a [person] wishes to insist upon the objection that he is not in court for want of jurisdiction over his person, he must specially appear for that purposes only and must keep out for all purposes except to make that objection' [citation]; otherwise, he waives 'any right [he] may have to insist that jurisdiction of [his] person had not been obtained.' " (*Id.,* at p. 352.)

▆ Furthermore, for public policy reasons the Carlyles are estopped from asserting lack of personal jurisdiction where they stipulated in open court to a settlement and have obtained the benefits of the consideration.

Also without merit is the Carlyles' contention that the judgment is void because the Association's voluntary dismissal of the action was filed and entered on February 7, 1983, prior to the court's signing of a formal judgment on March 11. The crucial event here was the court's rendering of the decision and judgment on February 4, which preceded the Association's dismissal. Section 581 only authorizes a voluntary dismissal "before decision rendered by the court." (§ 581, subd. 5.) Accordingly, the Association by filing a voluntary dismissal did not, and could not, divest the court of

jurisdiction once the court announced its ruling and decision on February 4.[5]

By its February 4 ruling granting the 664.6 motion to enter judgment, which was entered in the court's minutes that same day, the court "rendered" its decision and judgment (§ 577). ■ The "rendition" or giving of judgment is a judicial act as distinguished from the "entry" of a judgment which is merely a ministerial act. (*Associated Convalescent Enterprises* v. *Carl Marks & Co., Inc., supra,* 33 Cal.App.3d at p. 121; see 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 42, p. 3210.) Here, under section 664.6, the granting of the motion constituted the rendition of a judgment. (See 4 Witkin, Cal. Procedure, *supra,* § 44, p. 3211.) Where, as here, a "statement of decision" is not required or waived, the judgment is "rendered" as soon as the decision is entered in the minutes of the court. (*Aspegren & Co., Inc.* v. *Sherwood, Swan & Co.* (1926) 199 Cal. 532, 537 [250 P. 400]; *Brownell* v. *Superior Court* (1910) 157 Cal. 703, 707 [109 P. 91]; *Brown* v. *Barham* (1966) 242 Cal.App.2d 696, 704 [51 Cal.Rptr. 781].)

There was nothing tentative or preliminary about the minute order. The order explicitly stated that "the court now makes its decision and ruling as follows," expressly announced that the motion was "GRANTED," and described in detail the essential holdings to be included in the form of judgment. The court properly could delegate to the Association's counsel the clerical or ministerial act of drafting a form for entry of a formal judgment reflecting the court's rendition of judgment in conformity with the stipulated settlement.

Both the Association and the Carlyles herein were required to enter dismissals with prejudice pursuant to the terms of the stipulated settlement agreement. The preferred procedure would have been for all these dismissals to be filed with the clerk where the judge was sitting on the case so that the judge could control the entry and ensure that the dismissals were filed to coincide with entry of the formal judgment. It is obvious that the Association's voluntary dismissal was filed solely to comply with the terms of the settlement as required in the stipulation and incorporated by the court into its judgment. Clearly the Association, which had just been granted its motion to compel enforcement of the stipulation by entry of a judgment

---

[5]The Carlyles' reliance on cases dealing with the appealability of the minute order is misplaced. The issue here is not whether the Carlyles could appeal from the decision and minute order entered on the court's minutes, rather than from the judgment ultimately entered in March. Instead, the issue is whether the filing of the Association's voluntary dismissal on February 7 occurred "before decision rendered by the court" (§ 581, subd. 5) so as to divest the court of jurisdiction.

therein, never intended by this action to divest the court of jurisdiction to grant it the requested relief.

Accordingly, the judgment is affirmed.

Johnson, J., and Harris, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.